## S. Rose Lloyd, Petitioner, v. Commissioner of Internal Revenue, Respondent.

Docket No. 75765. Promulgated July 3, 1935.

*Percy W. Phillips, Esq.*, and *Eustis Myres, Esq.*, for the petitioner.
*R. W. Wilson, Esq.*, and *R. K. Jones, Esq.*, for the respondent.

### OPINION.

TRAMMELL: The only question for our decision is whether the taxpayer sustained a net loss in 1928 from a trade or business regularly carried on, so that the amount thereof in excess of the income of 1929 is deductible in 1930.

The parties at the hearing stipulated that petitioner sustained a loss in 1928 sufficient to wipe out all income for the years 1928, 1929, and 1930, and that the only question for decision is as above set out, it being further stipulated that if the loss was sustained by petitioner in a trade or business regularly carried on in 1928, there is no deficiency for 1930.

In view of the stipulation of the parties the testimony was limited to the narrow issue presented.

The pertinent sections of the Revenue Act of 1928 applicable to the question are as follows:

SEC. 117. (a) *Definition of "net loss"*.—As used in this section the term "net loss" means the excess of the deductions allowed by this title over the gross income, with the following exceptions and limitations:

(1) NON-BUSINESS DEDUCTIONS.—Deductions otherwise allowed by law not attributable to the operation of a trade or business regularly carried on by the taxpayer shall be allowed only to the extent of the amount of the gross income not derived from such trade or business;

(2) CAPITAL LOSSES.—In the case of a taxpayer other than a corporation, deductions for capital losses otherwise allowed by law shall be allowed only to the extent of the capital gains.

\* \* \* \* \* \*

(b) *Net loss as a deduction*.—If, for any taxable year, it appears upon the production of evidence satisfactory to the Commissioner that any taxpayer has sustained a net loss, the amount thereof shall be allowed as a deduction in computing the net income of the taxpayer for the succeeding taxable year (hereinafter in this section called "second year"), and if such net loss is in excess of such net income (computed without such deduction), the amount of such excess shall be allowed as a deduction in computing the net income for the next succeeding taxable year (hereinafter in this section called "third year"); the deduction in all cases to be made under regulations prescribed by the Commissioner with the approval of the Secretary.

\* \* \* \* \* \* \*

SEC. 101. (c) (2) "Capital loss" means deductible loss resulting from the sale or exchange of capital assets.

SEC. 101. (c) (8) "Capital assets" means property held by the taxpayer for more than two years (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale in the course of his trade or business.

We are convinced that the petitioner's contention should be sustained. The fact that the petitioner sold a million and a half dollars worth of real estate, or 75 percent of her inheritance, in small parcels during the period from 1914 to 1928 and bought other real estate or invested in real estate notes, coupled with constant activity in connection with such sales and purchases over each of the years, it seems to us, is sufficient to justify the conclusion that she was *regularly* engaged in the business of buying and selling real estate. Certainly,

such activity constituted a material part of the business regularly carried on by her. The fact that she in addition to buying, selling, and trading in real estate, was also engaged in renting real estate and collecting rentals from it and otherwise looking after and occupying her attention in other ways, all connected with and pertaining to real estate, is not sufficient, in our opinion, to warrant us in holding that she was not engaged in the business of a dealer in buying and selling real estate. She had an office in her home, where she constantly engaged in looking after such matters by correspondence, and she was constantly interviewing people with the view of buying, selling, or trading in real estate, as well as attending to matters of rentals, repairs, and improvement of her properties. Her activity was such that it should properly be held to be a trade or business reguarly carried on. It is not necessary that one occupy a full day each day in carrying on one's activity to be considered to be regularly engaged in business. It is continuity of efforts devoted to the undertaking which constitutes a business regularly carried on. See *Harry F. Harper*, 20 B. T. A. 143; *C. C. Huxford*, 20 B. T. A. 39; *Charles M. Bryan*, 21 B. T. A. 364; *Maude Enella Brickell*, 17 B. T. A. 711.

Clearly the transaction which resulted in the loss in 1928 was not a mere isolated transaction. We think the loss sustained by the petitioner in 1928 from the sale of the Youree Hotel is attributable to a business regularly carried on. If a loss results from or is incidental to the operation of a trade or business regularly carried on by the taxpayer, it is sufficient to bring it within the net loss provisions of the statute. *William M. Lovering*, 21 B. T. A. 1260; *C. C. Huxford, supra; T. I. Crane*, 17 B. T. A. 720; *Philip Kobbe Co.*, 4 B. T. A. 663.

Respondent suggests in his brief that the sale of the Youree Hotel was the disposition of a capital asset and for that reason comes within an exception to the net loss provisions of the statute quoted, but since we conclude that the purchase and sale of real estate was a business regularly carried on by petitioner, and since the evidence establishes that all of petitioner's property, including the hotel, was held primarily for sale in the course of her trade or business, it does not come within the capital loss exception of the statute, hereinabove referred to.

The parties having agreed that if the petitioner is entitled to carry forward the 1928 loss as a net loss, there is no taxable net income for 1930, it follows that there is no deficiency. Respondent's determination is disapproved.

Reviewed by the Board.

*Judgment will be entered for the petitioner.*

TURNER dissents.